## J. M. Tyler and Wife *v.* Wm. G. Wheeler et al.

**Creditor's Bill — Improper Parties Thereto.**

> A creditor's bill was filed, charging fraudulent conveyances from husband to wife; the husband purchased and placed at the mill of the wife certain machinery under circumstances which did not vest title in her: *Held*, that a decree rendered against the wife as a debtor of her husband was void.[1]

---

**1**

Since section 1178, Code of 1880 (Code 1892, § 2294) became operative no transfer of property between husband and wife is valid as against third persons, unless it be in writing, acknowledged, and filed for record. This is true as to any third person whether creditor or purchaser, and whether his rights accrued before or after the transfer. Gregory *v.* Dodds, 60 Miss. 549.

Such transfer being invalid as to third persons, unless acknowledged and recorded, as to such persons, parol evidence is incompetent to show either the transfer or notice thereof. Montgomery *v.* Scott, 61 Miss. 409; Watkins *v.* Duvall, 69 Miss. 364, 13 So. 727.

Where cotton not produced by the wife, but being a part of her husband's crop, is transferred by him to her, the transfer not being in writing, acknowledged, and recorded as required by section 1178, Code 1880, is void and a purchaser thereof from her acquires no title and cannot maintain an action against another for its conversion. Black *v.* Robinson, 62 Miss. 68.

The fact that a husband, who has bought personal property with his own means, permanently affixes it to his wife's land cannot defeat the provisions

On January 17, 1885, appellant sued out an attachment on the property of J. M. Tyler, returnable to the Circuit Court of Lincoln county, alleging that appellant, J. M. Tyler, had property or rights in action which he refused to apply to payment of his debts, and that he had assigned and disposed of, or was about to assign and dispose of his property and rights in action with intent to defraud his creditors, and that he had converted or was about to convert his property into money or evidences of debt with intent to place it beyond the reach of his creditors. Upon trial of this cause one Ira W. Tyler interposed a claim for the goods seized under the attachment, and the case being submitted to a jury, the attachment was adjudged to have been wrongfully sued out without damages, and was dismissed. Appellees, W. G. Wheeler, and Cullum and Newman, then instituted this suit as a creditor's bill in the Chancery Court against J. M. Tyler, Ira W. Tyler, and M. L. Tyler, charging that J. M. Tyler had transferred all of his property to his wife and one Ira W. Tyler. It is shown that J. M. Tyler purchased for his wife, M. L. Tyler, a certain mill property, and during the course of his dealings as a merchant in Bogue Chitto, he purchased from J. H. Sasser certain machinery for $600 which was sent to and used at the mill owned by M. L. Tyler, his wife. This purchase from J. H. Sasser was by J. M. Tyler as an individual, he having prior thereto become surety on notes owing by J. H. Sasser to the I. C. Railroad. J. M. Tyler sold and conveyed to Ira M. Tyler all his goods, wares, and merchandise for a consideration of $625, which amount was paid by a debt owing from J. M. Tyler to Ira W. Tyler for labor as a clerk in his store. A decree was rendered by the chancellor adjudging the indebtedness sued on to be due by J.

of section 1178, Code 1880, which makes void as to third persons all transfers of property between husband and wife if not in writing, acknowledged, and filed for record. Arnold v. Elkins, 67 Miss. 675, 7 So. 521.

Under Code, § 2294, declaring that conveyances between husband and wife shall not be valid, as against third persons, unless acknowledged and recorded, an unacknowledged deed from the husband to his wife passes no title, as against an attaching creditor of the husband, though such creditor saw the instrument on record, and had actual knowledge of the conveyance before the attachment. Snider v. Udell Woodenware Co., 74 Miss. 353, 20 So. 836.

A transfer of property from a husband to his wife otherwise valid, under Code 1892, § 2294, regulating the subject, is not rendered invalid by the fact that suits were threatened or pending against the husband at the time it was made. Donoghue v. Shull, 85 Miss. 404, 37 So. 817.

M. Tyler and adjudging the transfer of the property bought from Sasser by J. M. Tyler to the mill owned by M. L. Tyler to have been fraudulent and decreed the codefendant, M. L. Tyler, liable to complainants for the amount of their debts and all costs of this suit, but limited the total liability of M. L. Tyler to $600, the amount of the fraudulent transfer. From this decree defendants appeal.

APPEALED from Chancery Court, Lincoln county, L. Mc-Laurin, Chancellor.

Reversed and judgment here, March 1, 1886.

*Attorney for appellant, R. H. Thompson.*

*Attorneys for appellee, Sessions & Cassedy.*

Brief of R. H. Thompson:
* * * As to whether the final decree is not entirely outside of the pleadings is to be determined, of course, by a careful examination of the record itself. * * *

I defy opposite counsel to point out an allegation in the bill to which a transfer of the Sasser machinery from Mr. to Mrs. Tyler can be legitimately referred. Mrs. Tyler has never been called on to present any defense, or to give her version of that matter. If the decree in this cause is correct, it will be idle hereafter to talk of notice being a requisite to the rendition of a valid judgment. The woman was never notified that the transaction adjudged fraudulent by the decree was ever complained of by any one. * * *

The facts do not show a fraudulent conveyance of property within the meaning of section 1843, Code of 1880. In fact, under section 1178, Code of 1880, it is no conveyance whatever. Certainly it is not a fraudulent conveyance, nor do the facts show or constitute a " device resorted to for the purpose of hindering, delaying, or defrauding creditors."

It was well said in the case of Citizens' Insurance Co. *v.* Ligon, 59 Miss. 305, on page 317, speaking of section 1843: " But if, upon final hearing, it shall be made to appear that the conveyances were not fraudulently made, then the complainants, having failed to maintain that phase of their case which alone gives jurisdiction to the court, ought to be remitted to the court of law to establish and enforce their demands."

This proposition of law applied to this case will reverse it.

Section 1843, Code 1880, was never intended to make anything fraudulent which was not fraudulent before its passage.

When we turn to section 1178, Code 1880, the same observation is applicable. It was never intended to make anything fraudulent which was not fraudulent before its passage.

It is nothing more than the statute which declares written evidence necessary to charge a party on a contract respecting lands. No more can he be said to have fraudulently done that which he has not done at all.

Under it the transfer of the machinery from Mr. to Mrs. Tyler may have been invalid; but it was not fraudulent. The transfer was not made for the purpose of defrauding. There is not a particle of evidence even tending to show a fraud.

A mere intention to convey is not a conveyance; but if the delivery be considered a conveyance there is nothing to show that it was intended to defraud. Had Tyler executed and his wife recorded a bill of sale it would have been perfectly valid under the facts. The consideration for it was $600 to be paid when Mrs. Tyler could, and the machinery was to be used to make money to satisfy the debt due to those from whom it was purchased. Less than this cannot be fraudulent.

Especially Cullum & Newman cannot say it was fraudulent as to them, their debt having been contracted after the transaction. It would probably be invalid as to them under the decision in Dodd's case, but not fraudulent. This same observation applies to a part of Wheeler's debt. The final decree draws no distinctions between debts existing at the time of the transaction and those afterward contracted.

Brief of Sessions & Cassedy:

Various fraudulent conveyances and acts as well as a general purpose on the part of the appellant, J. M. Tyler, to so place his property in the names of his wife and his brother as to avoid his liability to creditors and to protect it against their assaults, is charged by the bill. * * *

But it is objected that the bill is not sufficiently broad to uphold the decree as rendered; that it is a personal decree against J. M. Tyler and Mrs. J. M. Tyler for the amount of complainant's debt. The end attained is not so much objected to as the route by which it was reached. * * *

In addition to the allegations of the bill, it also, among other things, prays specifically for a personal decree against Mrs. Tyler. * * *

Any bill filed to unearth fraudulent transfers, transactions, or devices cannot, in the nature of things, be always specific as to the exact details of the devices resorted to. To a great extent every bill of this character is a bill for discovery. It is sufficient if the scope and purpose of such a creditors' bill is apparent, and a decree, we take it, should follow for the attacking creditor if it appears from the answer and the proof, either or both, that relief should be granted. * * *

If a debtor secretes personal property and a creditor files his bill alleging removal, transfers, etc., fraudulently, which the debtor indignantly denies in his answer, averring that he has nothing in the world, and the proof happens to show that John Smith owes him for several hundred dollars' property, attempted to be sold him, or declares the whereabouts of secreted property, we would be met, if appellant's theory is to prevail, with the answer, when we come to enter up the decree subjecting the property or enforcing the debt against the would-be purchaser (who has also filed an answer averring the utter poverty of the debtor), with the suggestion: "You have remedy at law. Dismiss your bill and bring suit in the Circuit Court." Give us the beneficent imparlance term and six months for the sheriff to "make the money."

Applied to Tyler's case, where would the property be by that time, and how many prior liens would protect the wife. Section 1178 would be sacredly observed in the meantime, the transfer would not only be in writing, but would be entirely formal, with the regulation number of "whereases" and "aforesaids" and be "duly recorded." * * *.

On the question of jurisdiction the following authorities cited: 3 Pomeroy's Equity Jurisprudence, § 1415; 20 Johns. (N. Y.) 570; 1 Cush. (Miss.) 88; 31 Miss. 34; 33 Miss. 163.

OPINION.— CAMPBELL, J., delivered the opinion of the court:

The complaint against the decree as being outside of, and not warranted by the bill, is not well founded.

The bill charges that Tyler had diverted some $1,400 from his mercantile business, as his books show, which went to the improvement of his wife's property or was consumed for her benefit, and thereby made her debtor to Tyler for it.

The answer denies this charge, and states that one item of $600 charged to the $1,400 account, called the "mill account," is improperly charged thereto, and the history of this item is given. It thus appears that the $1,400 alleged by the bill to have been diverted by Tyler to the use of his wife was made up of an item of $600, among others, and this was, therefore, included in the allegation as to the "mill account" of $1,400.

Upon the facts shown by the evidence of Tyler, we think the bill is maintained, and that his creditors, without regard to date, are entitled to have appropriated to their claims the articles acquired by him from Sasser, and put at his wife's mill, under circumstances which did not vest title in her or make her his debtor for them. Because she is not shown to have been his debtor, the decree was improperly rendered against Mrs. Tyler, and should have been for sale of the goods as the property of Tyler.

*Reversed.*